IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MICHAEL J. BOUSHON,

                    Plaintiff,                         OPINION AND ORDER

        v.
                                                       11-cv-397-wmc
CAROLYN COLVIN,
Acting Commissioner of Social Security,

                    Defendant.

        In this action for judicial review of an adverse decision of the Commissioner of

Social Security brought pursuant to 42 U.S.C. § 405(g), Michael J. Boushon seeks reversal

of the Commissioner's decision finding him ineligible for Disability Insurance Benefits.

In particular, Boushon contends that the administrative law judge ("ALJ") erred by failing

to: (1) consider the finding of a medical expert that Boushon had a listed impairment for

twelve months; (2) properly assess the report of Dr. Kirkhorn; (3) give proper weight to

his functional capacity evaluation; (4) find Boushon had a mental impairment that

equaled Listing 12.05C; and (5) include limitations concerning concentration, persistent

or pace in the hypothetical question to the vocational expert.

        After a review of the record, the court finds that the ALJ properly considered Dr.

Kirkhorn's report and his functional capacity evaluation.  The ALJ also properly found

Boushon did not meet or equal a listed mental impairment.  However, the court finds

that the ALJ erred in finding Boushon lacked a physical impairment that met Listing 1.04

by failing to consider the medical expert's opinion.  The ALJ also erred when he did not include Boushon's limitations in maintaining concentration, persistence or pace into the RFC or as a question to the vocational expert.  Therefore, the court must remand this case to the Commissioner for proceedings consistent with this opinion.[1]

FACTS

A.  **Background**

Michael J. Boushon was born on August 17, 1961, and has a limited education and a borderline IQ.  Boushon engaged in past relevant work as forklift operator, stacker and floor assembler.  (AR 30.)

On February 16, 2006, Boushon filed an application for disability insurance benefits, alleging that he had been unable to work since October 29, 2004, because of ruptured discs in his lower back.  After the local disability agency denied Boushon's application initially and upon reconsideration, he requested a hearing, which was held on February 5, 2009, before Administrative Law Judge Kevin M. McCormick.  The ALJ heard testimony from Boushon (AR 36-46), a neutral medical expert (AR 47-56), and a neutral vocational expert (AR 56-67).  On  August 5, 2009, the ALJ issued his decision, finding Boushon was not disabled.  (AR 20-32.)  This decision became the final decision

---

[1] This Opinion and Order was originally transmitted electronically by chambers for entry by the clerk's office on June 24, 2014, but due to an apparent oversight (one that is exceedingly rare) was not entered at that time.  On June 27, 2014, defendant docketed its motion for remand.  In light of the timing, as well as the motion's indication that plaintiff's counsel "does not agree to Defendant's motion," the court believes it is appropriate to deny the motion as moot.

of the Commissioner on April 8, 2011, when the Appeals Council denied Boushon's request for review.   (AR 1-5.)

## B. **Medical Evidence**

Boushon received regular care for low back pain from Andrew Vo, M.D., from October 2004 to December 2005.   Dr. Vo's initial assessment was radicular low back pain and history of lumbar disc herniation.   (AR 199.)   On October 29, 2004, Boushon had an exacerbation of his low back pain at work.   (AR 201-02, 302.)   He received lumbar epidural steroid injections in November and December 2004.   (AR 215, 233.)

A lumbar spine magnetic resonance imaging scan (MRI) done on December 7, 2004, showed Boushon had right paracentral disc herniation at L5-S1 leading to further compression of the right S1 nerve root and compression upon the thecal sac.   (AR 223-25.)

In February 2005, Boushon saw Sanjay Rao, M.D., for a neurosurgical evaluation. (AR 240-41, 246-47.)   On examination, Boushon's back did not have significant tenderness on palpation, range of motion on lumbar flexion and extension was full, straight leg raising was negative.   Neurologically, Boushon had normal tone, bulk, and strength throughout the lower extremities; deep tendon reflexes were only significant or a mildly depressed left knee jerk, and there were no focal sensory abnormalities to light touch in the lower extremities.   (AR 240.)   Lumbar spine x-rays showed disc space narrowing at L3-L4, L4-L5, and L5-S1 but no instability with flexion or extension.   (AR

3

248.)   Dr. Rao stated that Boushon had no mechanical signs such as positive straight leg elevation or objective neurological findings on examination to suggest radiculopathy and did not recommend surgery.   (AR 240-41.)

With the exception of one instance of an equivocal supine straight leg raising test on the left side (AR 284), Boushon had normal examinations from February to April 2005, including full ranges of motion of the spine and full muscle strength in the lower extremities.   (AR 242, 267, 272, 284.)   In April and May 2005, Dr. Vo stated that Boushon was in stable condition without focal muscle weakness in his lower extremities. (AR 292, 304.)   Still, Dr. Vo restricted Boushon to sedentary to light work.   (AR 253, 269, 276, 286, 296.)

In February 2005, Boushon saw Mazin Al-Tamimi, M.D., for an evaluation for pain management.   (AR 251-52, 255-57.)   An examination was normal, including negative bilateral straight leg raising and full motor strength.   (AR 251.)   Dr. Al-Tamimi recommended starting with a lumbar epidural steroid injection, which Boushon underwent the following week.   (AR 251, 258.)   In March 2005, Boushon again had negative straight leg raising and full motor strength, but slight nondermatomal sensory changes in the left leg, for which Al-Tamimi ordered a nerve conduction study.   (AR 265-66.)

Boushon underwent the nerve conduction study on March 28, 2005.   (AR 274-75.)   The study showed no electrodiagnostic evidence of lumbar radiculopathy. The

4

abnormal left peroneal motor nerve study could be explained by a left lumbar nerve root injury due to disc herniation.   (AR 275.)

A lumbar spine MRI taken on April 18, 2005, showed a broad-based disc extrusion at L4-L5, which was subtly larger, causing more lateral recess compromise on the left. (AR 291.)   The L5-S1 level also demonstrated foraminal compromise with potential nerve root impingement affecting the right side.   (AR 291.)

In May 2005, Boushon saw Tom Faciszewski, M.D., for another surgical evaluation.   (AR 302-03, 306-10.)   On examination, Boushon had normal sensation to light touch in both lower extremities with symmetrical reflex at the knees and ankles. AR 302. Based on the MRI scan, Faciszewski indicated that a L5 nerve root injection would be helpful given his L4-L5 lateral recess compromise.   (AR 303.)   Boushon underwent the nerve root injection two weeks later.   (AR 315-16.)   Faciszewski then ordered a nerve conduction study.   (AR 319.)

The nerve conduction study, dated June 28, 2005, showed mild-chronic and old changes in the left L5 and S1, as well as right L5 distribution, but no evidence of left peroneal neuropathy.   (AR 320-22.) Dr. Faciszewski stated that the report verified Boushon's left L5-S1 chronic change, which fit with his symptoms.   (AR 323.)

On August 2, 2005, Boushon underwent a left L4-L5 discectomy and bilateral internal laminoplasty at L4-L5.   (AR 340-41.)   At his two-week post-operative visit, Boushon reported that his pre-operative leg pain was now gone.   On examination, he had

5

full (5/5) strength in his lower extremities and a negative straight leg raise.   (AR 349.)   In October 2005, Boushon reported to Dr. Faciszewski that his leg pain was gone, but he still had persistent back symptoms.   (AR 351.)   Faciszewski gave him a sedentary work restriction and referred him back to Dr. Vo.   (AR 351, 356.)

Boushon saw Dr. Vo four times from October to December 2005.   (AR 357-59, 363-65, 369-71, 393-94.)   Boushon reported having excellent leg pain relief from his surgery, but he continued to have persistent low back pain.   (AR 357.)   His examinations showed ranges of motion within functional limits, no focal muscular atrophy, intact sensation to light touch and full muscle strength in the lower extremities.  (AR 358.)   Bouchon did have right lumbar paraspinal muscle tightness with reproducible pain and discomfort, but had an active range of motion within functional limits.   (AR 363, 369, 393.)   As a result, Dr. Vo gave Boushon light to medium work restrictions.  (AR 359, 365, 371, 394.)   Boushon also received five sessions of physical therapy in late November and early December 2005. (AR 376-86, 388-91.)

In January 2006, Boushon saw Alexander Yakovlev, M.D., a pain management specialist, for consideration of spinal cord stimulator placement.   (AR 400-06.) On examination, Boushon's pain in his low back was aggravated by any range of motion, but his straight leg raising was negative bilaterally and he had full (5/5) muscle strength and no sensory deficit.   (AR 401.)   Yakovlev recommended, and Boushon underwent, evaluations by physical and occupational therapy.   (AR. 401, 413-19.)   In March 2006,

Boushon discontinued treatment with physical medicine and the pain clinic due to the termination of his worker's compensation benefits.   (AR 427.)

In September 2007, Boushon returned to Dr. Vo for further evaluation of his low back pain.   (AR 614-16.)   Vo's assessment was chronic axial low back pain due to arthropathy and disc derangement.   (AR 615.)   Vo noted that Boushon did not have any signs or symptoms of lumbar nerve root irritation.   (AR 615.)   Vo did not have any new therapeutic recommendations, but told Boushon he could refer him to a chronic pain management program or for a functional capacity evaluation.   (AR 615.)

In September 2008, Boushon saw Steven Kirkhorn, M.D., for an occupational medicine disability evaluation.   (AR 632-34.)   Dr. Kirkhorn's assessment was chronic low back pain status post L4-L5 laminoplasty and discectomy and recommended a functional capacity evaluation.   (AR 634.)   Dr. Kirkhorn also gave Boushon the following permanent work restrictions: a four hour workday with lifting and carrying 11-20 pounds seldom, no lifting over 10 pounds from the floor, lifting from the floor seldom, bending and twisting occasionally, no operating heavy equipment or jumping from heights or climbing ladders, climbing stairs occasionally, and carrying to approximately 50 feet maximum occasionally.   (AR 634.)

Later that month, Boushon underwent a functional capacity evaluation over a two-day period.   (AR 637-44.)   The examiner noted that the test results placed Boushon in   the light-medium (20 pounds frequently, 30 pounds occasionally) work capacity level,

but his perceived abilities placed him in the sedentary level.  (AR 642-44.)   The actual test results appeared to be fairly representative of Boushon's functional capacity, although he did self-limit due to pain during the functional lift tests.   (AR 642.)

## C.   <u>Consulting Physicians</u>

In May 2006, Boushon saw Stuart Waltonen, Ph.D., for a consultative psychological evaluation requested by the state agency.  (AR 428-35.)   Boushon reported that he dropped out of high school in the tenth grade.  (AR 428.)   Intellectual testing indicated that Boushon was in the borderline range of intelligence, with a full scale IQ score of 74.  (AR 431.)   Waltonen diagnosed borderline intellectual functioning.  With regard to Boushon's work capacity, Waltonen opined that he could remember and carry out simple instructions and respond appropriately to supervisors and coworkers.  (AR 432.)   In addition, if Boushon was experiencing pain, he opined that there could be some element of irritability which could interfere with some interpersonal contact, as well as his ability to attend and work at a reasonable pace.  (AR 432.)

On June 12, 2006, state agency physician Pat Chan completed a physical residual functional capacity assessment for Boushon listing a diagnosis of degenerative disc disease.  (AR 389.)   Chan found that Boushon could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour work day.  (AR 437.)   He found that Boushon could frequently climb and balance and occasionally stoop, kneel, crouch and crawl.  (AR 438.)

8

In July 2006, Boushon saw Ward Jankus, M.D., for a consultative examination requested by the state agency.  (AR462-64.)  On examination, Boushon had limited range of motion of his spine and a positive straight leg raise bilaterally in the supine position, but normal reflexes and full strength in the lower extremities.   Jankus's impression was chronic mechanical lower back pain probably secondary to degenerative disc changes and history of partially successful lower back disc surgery.   (AR 463.)

On August 11, 2006, state agency physician Mina Khorshidi completed a physical residual functional capacity assessment for Boushon, listing a diagnosis of lumbar degenerative disc disease, status post discectomy.   (AR 483.)   Khorshidi found that Boushon could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour work day.   (AR 484.) She found that Boushon could frequently climb and balance, kneel, crouch and crawl and occasionally stoop, but that his reaching in all directions including overhead was limited. (AR 485.)

On June 14, 2006, state agency psychologist Roger Rattan completed a psychiatric review technique form for Boushon, finding that he had mental retardation.   (AR 444.) Mandli also found mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.   (AR 454.)

Rattan completed a mental residual functional capacity assessment for Boushon, finding that he was moderately limited in the ability to:   understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; interact appropriately with the general public; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.   (AR 458-59.)

On August 10, 2006, state agency psychologist Michael Mandli completed another psychiatric review technique form for Boushon, also finding that he had mental retardation (AR 469) and the same limitations with respect to activities of daily living, maintaining social functioning, concentration, persistence or pace, with no episodes of decompensation (AR 479).   As had Rattan, Mandli also completed a mental residual functional capacity assessment for Boushon, confirming that he was moderately limited in the ability to follow detailed instructions, concentrate, perform activities within a schedule, interact appropriately with the general public, travel, and set realistic goals or make plans independently.   (AR 465-66.)

D. **Hearing Testimony**

At the administrative hearing, Boushon confirmed that he dropped out of school in the tenth grade, then worked as a forklift operator, stacking feed bags and putting flooring

10

in trailers.  (AR 36, 38.)  Boushon also testified that he had been supporting himself since 2004 on a settlement he received from workers compensation.   (AR 39.)

Boushon testified that he could read a newspaper and could add and subtract, but could no longer work because of his lower back condition, for which he had surgery in August 2005.  (AR 40-42.)  He took Advil for the pain and alternated between sitting and standing during the day.  (AR 42–43.)  He also walked a couple of miles a day. (AR 44.)   Boushon reported being able to lift ten pounds.   (AR 45.)

The ALJ called Dr. Alanson A. Mason, a board certified orthopedic surgeon, to testify as a neutral medical expert.   (AR 46.)   Mason testified that Boushon had demonstrated findings consistent with radiculopathy secondary to L4-L5 lateral recess compromise with a disc protrusion and that he had a "lumbar laminectomy at L4-5 and a foramenotomy on the left decompressing the L5 nerve root."  While the 2005 surgery was designed primarily to relieve nerve root pressure and nerve root damage, he also testified that sometimes the surgery does not relieve back pain.  Mason testified that Boushon continues to have back pain, which affects his ability to function to a significant degree.   (AR 48.)

Dr. Mason further opined that Boushon met the listing 1.04, Disorders of the Spine, for six months his surgery date of August 2, 2005, and for six months after that date -- which would be a period running from before February 2, 2005 to February 2, 2006.  (AR 48-49.)   He testified that after February 2, 2006, Boushon retained the

residual functional capacity to:   lift, push and pull up to 10 pounds occasionally and less than 10 pounds frequently; walk or stand two hours in an eight-hour work day; and sit six hours in an eight-hour work day with the option of alternating sitting or standing for five minutes in an hour.   In Mason's opinion, Boushon could also perform frequent climbing of ramps and stairs and occasional climbing of ladders, as well as balancing, kneeling, crouching and stooping, but could not climb ropes and scaffolds, crawl, work with vibrating equipment or be exposed to unprotected heights.   (AR 50-51.)   Finally, Mason testified that Boushon had no limitations on reaching and could work an eight-hour day. (AR 55-56.)

Next, the ALJ called Susan Allison to testify as a neutral vocational expert.   AR 56.   In hypothetical one, the ALJ asked Allison to assume an individual with Boushon's characteristics who was limited to lifting and or carrying 20 pounds occasionally, 10 pounds frequently, able to stand or walk for six hours, unlimited pushing and pulling, occasional stooping, all other postural positions frequently, occasional overhead work and unskilled work.   With these limitations, Allison testified that Boushon could not perform his past work, but could perform light unskilled work such as electrical assembly, fast food worker and cashier II.   (AR 57-58.)   The ALJ posed second hypothetical question adding the limitations found by Dr. Mason.   (AR 58.)   Although he could not perform Boushon's past work, Allison testified that an individual with those limitations could still perform sedentary, unskilled work such as final assembler for eyeglasses, order clerk, stem

mounter and callout operator.   (AR 59.)   In the third hypothetical, the ALJ asked Allison to assume the same individual could also stand or walk three hours in an eight-hour day and sit three hours in an eight-hour day.   Allison testified that individual could perform no full-time competitive work.[2]

On cross-examination, Boushon's lawyer asked Allison to add Dr. Waltonen's pain limitations to hypothetical two.   Allison testified that if the individual had pain interfering with his work pace a third of the day, then he would not be able to sustain employment.   (AR 66.)   Allison further testified that if the individual was limited to occasional reaching, he would only be able to perform the final assembler job.   (AR 67.)

## E.   ALJ's Decision

In reaching his conclusion that Boushon was not disabled, the ALJ performed the required five-step sequential analysis.   *See* 20 C.F.R. §§ 404.1520, 416.920.   At step one, the ALJ found that Boushon had not engaged in substantial gainful activity since October 29, 2004, his claimed onset date.   At step two, he found that Boushon had severe impairments of (1) borderline intellectual functioning and (2) lumbar spine disorder, status post discectomy.   He also found that Boushon's cataracts were a non-severe impairment.   (AR 22.)   At step three, the ALJ found that Boushon did not have an impairment that met or medically equaled any impairment listed in 20 C.F.R. 404,

---

[2] Allison also testified that each of her opinions were consistent with *The Dictionary of Occupational Titles*.   (AR 59.)

Subpart P, Appendix 1. As to Boushon's physical impairments, the ALJ considered listing 1.04, Disorders of the Spine, but found Boushon did not meet the listed impairment because he had neither nerve root irritation nor any spinal cord compromise.   (AR 23.)

As to Boushon's mental impairment, the ALJ considered the requirements of listing 12.05, Mental Retardation, paragraphs A-D.   He found that Boushon did not meet the requirements of Paragraph A because he was not dependent on others for his personal needs.   As to Paragraph B, the ALJ found Boushon did not have a valid verbal, performance or full scale IQ of 59 or less.   Turning to paragraph C, he found that Boushon did not have a valid, verbal, performance or full scale IQ of 60-70 in addition to another physical or mental limitation which imposed additional significant work-related limitation of functioning.   Paragraph D requires a valid verbal, performance or full scale performance of 60-70 and two of the following:   marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation each for extended duration.   Although Boushon's IQ score was above this range, the ALJ also considered his abilities, finding that he had mild restrictions in the activities of daily living, mild difficulties in social functioning and moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation.   (AR 23-24.)

The ALJ ultimately found that Boushon retained the residual functional capacity to perform sedentary work with the opportunity to alternate sitting and standing for five

14

minutes each hour; limited pushing and pulling to 10 pounds occasionally and less than 10 pounds frequently; frequent climbing of ramps and stairs, occasional climbing of ladders; no climbing of ropes and scaffolds; occasional balancing, kneeling, crouching and stooping; and no crawling, use of vibratory equipment or exposure to unprotected heights. He also found that Boushon was limited to unskilled work.   (AR 25.)

At step four, the ALJ found that Boushon was unable to perform his past relevant work.   At step five, the ALJ relied on the testimony of the vocational expert to find that sedentary, unskilled jobs existed in significant numbers in the national economy that Boushon could perform, including final assembler of eye glasses, stem mounter of light fixtures and call-out operator.   (AR 31.)   The ALJ opined that the testimony of the vocational expert was consistent with the information contained in the *Dictionary of Occupational Titles*.   He then found Boushon not disabled from October 29, 2004, through the date of his decision.   (AR 32.)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner is well settled:   the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."   42 U.S.C. § 405(g).   Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Richardson v. Perales*, 402 U.S. 389, 401 (1971).   When reviewing

the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards_v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). Nevertheless, the court must conduct a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* If the decision lacks evidentiary support or "is so poorly articulated as to prevent meaningful review," it cannot stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). When the ALJ denies benefits, he must build a logical and accurate bridge from the evidence to her conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

## I.   <u>Listed Impairment</u>

Boushon contends that the ALJ erred in effectively rejecting a medical expert's testimony that Boushon met Listing 1.04 for twelve months. Listing 1.04A provides:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

16

The ALJ found that Boushon did not have root irritation or spinal compromise, but nowhere in his decision does he mention Dr. Mason's opinion that Boushon met the listing 1.04 for twelve months (six months before and six months after his surgery, which was in August 2005).  The most troubling part of this omission is that in a subsequent portion of his decision the ALJ claims he gave significant weight to the opinions of Dr. Mason.  If weight is afforded to an opinion without qualification, it is expected that the opinion will be adopted in full, including that evidence that supports a finding of disability. If the opinion is not adopted, then this presents an internal inconsistency in the ALJ's decision that must be explained.  *See Huber v. Astrue*, 395 Fed. Appx. 299, 302 (7th Cir.2010); *Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006); SSR 96–8p (stating that the ALJ must "explain how material inconsistencies in the evidence in the case record were considered and resolved.")  Because the ALJ's decision is internally inconsistent and without proper explanation, such error warrants remand.

While the Commissioner *concedes* that the ALJ gave no rationale for ignoring Dr. Mason's opinion, she nevertheless argues that Dr. Mason's conclusion with respect to whether Boushon met the listing (or not) is **(1)** without evidentiary support and **(2)** even if Dr. Mason's conclusion had been credited, that the listing period suggested by him *falls short* of the statutory requirement that the impairment must last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509.

An initial problem with both arguments is that they were not addressed in the ALJ's decision.  The Seventh Circuit has criticized such *post hac* rationalizations.  *See*

17

*Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010) (courts finds disfavor with "the Justice Department's lawyers who defend denials of disability benefits often rely heavily on evidence not (so far as appears) relied on by the administrative law judge").

A further problem with the Commissioner's first argument is that Dr. Mason *did* provide reasons supporting his conclusion that Boushon met the listing requirement. Since these reasons have been discussed earlier in this opinion, they will not be repeated here except that Dr. Mason did opine that sometimes the surgery does not relieve back pain, which was precisely what occurred in this case, with Boushon still experiencing pain six months following his surgery on August 2, 2005.   (AR 48.)

With respect to the Commissioner's second argument -- that Dr. Mason's opinion would not have satisfied the continuous 12 month listing period -- it is worth outlining the relevant dates in question:

- February 16, 2005: Purported start date for Boushon's back impairment.

- August 2, 2005: Boushon's back Surgery.

- February 2, 2006: Purported end date for Boushon's back impairment.

The Commissioner contends that Boushon would fall 14 days short of satisfying the 1.04A listing requirement because (under one reading of the transcript) Dr. Mason opined that Boushon was disabled for five months and 16 days before the surgery and for six months after the surgery. (AR 49.)   But on another fair reading of the transcript, there seems to be some inconsistency with what Dr. Mason said and what he meant when he

states that Boushon had symptoms to meet the listing requirement "six months prior to his surgery."   (AR 48.)

In the end, this is simply further proof that remand is necessary.   On remand, the ALJ will need to address this apparent inconsistency.   SSR 96–8p (stating that the ALJ must "explain how material inconsistencies in the evidence in the case record were considered and resolved").   To the extent that there is any merit in the Commissioner's argument, the ALJ has a duty to fully and fairly develop the record.   Instead, the ALJ ignored Dr. Mason's opinion.   If there remains an evidentiary gap (or ambiguity) on remand as to what Dr. Mason was opining, the ALJ should take steps to address this deficiency by seeking additional testimonial evidence, providing an opportunity to the parties to cross-examine as necessary.   *See Richards v. Astrue*, 370 Fed. Appx. 731 ("[A]n ALJ may not draw conclusions based on an undeveloped record and has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable").

Accordingly, the court cannot affirm the Commissioner's finding that Boushon did not meet the listing 1.04 A.   The case will be remanded for a new determination at step three considering all the relevant evidence, including the opinion of Dr. Mason and the medical evidence of nerve root compression.

## II.   Medical Opinion: Dr. Kirkhorn

Boushon also argues that the ALJ erroneously rejected the opinions of Dr. Kirkhorn.   The Commissioner has established a regulatory framework that explains how

19

an ALJ is to evaluate medical opinions, including opinions from state agency medical or psychological consultants.   20 C.F.R. §§ 404.1527(d), 416.927(d).   Generally, opinions from sources who have treated the plaintiff are entitled to more weight than non-treating sources, and opinions from sources who have examined the plaintiff are entitled to more weight than opinions from non-examining sources.   20 C.F.R. §§ 404.1527(d)(1) and (2), 416.927(d)(1) and (2).   In addition to weighing whether the opinion is the product of ongoing treatment or physical examination, the ALJ should also consider the source's medical specialty and expertise, supporting evidence in the record, consistency with the record as a whole and other explanations regarding the opinion.   *Haynes v. Barnhart*, 416 F.3d 621, 630 (7th Cir. 2005); 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6). The ALJ "must explain in the decision" the weight given to the various medical opinions in the record.   20 C.F.R. §§ 404.1527(f)(2)(ii); 416.927(f)(2)(ii).   An ALJ must provide "good reasons" for the weight he gives a treating source opinion, *id.*, basing her decision on substantial evidence and not mere speculation.   *White v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999).

The ALJ provided specific reasons for giving little weight to Dr. Kirkhorn's opinion that Boushon could only work four hours in an eight-hour day.   First, the ALJ found that Kirkhorn was neither Boushon's treating physician, nor did he have any history of treating Boushon.   Second, he concluded that Kirkhorn's opinion was contradicted by treating sources.   Third, he found that Kirkhorn's opinion was based on Boushon's subjective

complaints.   Since these are all sound reasons for finding Kirkhorn's opinion suspect and are all supported by evidence in the record, the ALJ did not err in giving the opinion little weight.

### III.   Functional Capacity Evaluation: Evidence Supplied by Physical Therapist

Next, Boushon argues that the ALJ erred in giving little or no weight to the functional capacity assessment performed by a physical therapist, Monte Willcom. Evidence from "other sources" such as nurse practitioners, physician assistants, licensed social workers, naturopaths, chiropractors, and audiologists can establish the severity of the impairment and how it affects the claimant's ability to function.   *See* SSR 06-03p; 20 C.F.R. § 404.1513(d).   Although physical therapists are not expressly referred to in SSR 06-03p, the parties do not dispute that a physical therapist would fall within the ambit of the ruling.

The Commissioner also supports giving weight to the opinions of other medical sournces:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as

21

impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p.   The Commissioner's ruling goes on to explain that adjudicators should consider the same factors in weighing opinions from "other" medical sources as they would use in weighing "acceptable" medical sources, including the length and frequency of the treatment relationship, the consistency of the opinion with other evidence, the source's specialty and the degree to which the source presents relevant evidence to support the opinion.   *Id.*

In giving little weight to Willcom's functional capacity evaluation, the ALJ noted his specialty as a physical therapist and discussed evidence in his report that was pertinent to Boushon's disability claim.   Importantly, the ALJ noted the minimal length and frequency of the treatment relationship (a two day period) -- a factor that cuts against giving an opinion significant weight.   The ALJ also addressed other factors identified in SSR 06-3p that further reduced the weight given Willcom's evaluation, including that Boushon exhibited self-limiting behavior during the evaluation.   Instead of discounting Willcom's opinion because he was not an acceptable medical source,[3] the ALJ articulated

---

[3] While the ALJ does state flatly that the physical therapist's evidence was given less weight because the ALJ gave greater weight to those of doctors', the ALJ also found that the physical therapist's evaluation did not fully comport with the record. Had the ALJ just limited his analysis to a bare-boned statement of the superiority of the doctor's opinion without more, this may not have been enough for the purposes of judicial review.   *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (a decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review).

his reasoning through the framework permitted by SSR 06-03p.   Moreover, the ALJ's reasons for discounting Willcom's evaluation were supported by the evidence in the record.   Accordingly, the ALJ did not err in giving it little weight.

## IV.   **Mental Impairment**

While conceding that his IQ scores do not meet the requirements for a finding of mental retardation set forth at Listing 12.05C, Boushon argues that the Program Operations Manual System recognizes that IQ scores in the range of 70-75 may support a determination of equivalence to a mental impairment in the presence of other physical or mental disorders that imposes additional significant work related limitation of function. POMS DI 24515.056(D)(1).   The Program Operations Manual System is an internal manual for use by the agency and is not binding.   *Greenspan v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994)(POMS is not binding law);   *cf. Parker v. Lamon v. Sullivan*, 891 F.2d 185, 190 (7th Cir. 1989)(Hearings Appeals and Litigation Law Manual is not binding on the agency and has no legal force).   In any case, Boushon marshals no evidence to show that his borderline intelligence in combination with his physical impairment involve functional limitations equivalent in severity to a listed impairment.   Accordingly, the ALJ was

---

But because the ALJ's analysis of the other factors in SSR 06-03p is more fulsome, there is enough in the reasoning to allow this issue to pass muster. That said, and given that other issues in the ALJ's decision *do* require remand, the ALJ would be well served to supplement the reasoning as to why little weight has been afforded to the physical therapist -- *i.e.*, discuss how the physical therapist's evaluation is inconsistent with other doctors in the record. Express reference should also be made to which doctors in the record and what was opined by same in making the comparison with the physical therapist's evaluation.

justified in determining that Boushon's mental impairment did not singly or in combination with his physical impairment equal those in Listing 12.05C.

## V.     Concentration, Persistence and Pace

Finally, Boushon argues that the ALJ failed to address his limitations with respect to concentration, persistence or pace ("CPP") in finding him able to perform unskilled work. CPP "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R., Part 404, Subpt. P., App. 1, 12.00 C. 3. The Commissioner defines unskilled work as that requiring little or no judgment and involving only simple tasks, which can be learned in a short period of time. 20 C.F.R. § 416.968(a). While the descriptions for CPP limitations and unskilled work certainly overlap, they are not coterminous. For example, the Seventh Circuit has explained that when findings are made involving mental nonexertional limitations in CPP, the ALJ must incorporate them into the RFC, and that a finding of simple, repetitive or unskilled work does not adequately account for such limitations. *Craft v. Astrue,* 539 F.3d 668, 677-78 (7th Cir. 2008) (limiting hypothetical to simple, unskilled work does not account for claimant's difficulty with memory, concentration, or mood swings); *see also Stewart v Astrue*, 561 F.3d 679, 684 (7th Cir. 2009).

Here, the ALJ does not indicate whether limitations in CPP found by the consulting psychologist were considered in determining that Boushon could perform

unskilled work.  There is also specific evidence in the record that Boushon's condition *would* "interfere with his ability to attend and work at a reasonable pace" (AR 432). Such limitations as to pace were also *not* incorporated into the RFC.  *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619 (7th Cir.2010) (an ALJ is free to formulate his mental residual functional capacity assessment in terms such as 'able to perform simple routine repetitive work' so long as the record adequately supports the conclusion).

Rather than guess whether consideration of Boushon's CPP limitations is buried within the ALJ's finding him capable of unskilled work, the ALJ should consider this evidence on remand, together with the state agency psychologists' opinions that Boushon had moderate limitations in maintaining CPP, and should expressly account for any limitations both in determining Boushon's mental residual functional capacity and in posing hypothetical questions to the vocational expert.  *See Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004)(a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record).

ORDER

IT IS ORDERED that:

1. The decision of defendant Carolyn Colvin, Acting Commissioner of Social Security, denying plaintiff Michael J. Boushon's application for disability insurance benefits

is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for

further proceedings consistent with this opinion.

2. Defendant's Motion for Remand (dkt. #23) is DENIED as moot.

3. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 30th day of June, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

26